Argued December 8, 1913, decided January 6, 1914.

## BOGARD v. KENNEDY.

(137 Pac. 741.)

**Account—Scope of Relief.**

In a contract for an accounting, under a contract for the release of a mortgage of defendant's brother in consideration of the payment to plaintiff of proceeds of sales of lands purchased with funds advanced by defendant after repayment of the advances, where the complaint does not allege that sales were made in fraud of the agreement, or for less than the minimum price named in the agreement, the plaintiff cannot require an accounting for the land at a value greater than the price actually received by defendant.

From Marion: WILLIAM GALLOWAY, Judge.

Department 2.  Statement by MR. JUSTICE EAKIN.

This is a suit by Z. T. Bogard against Thomas N. Kennedy, Stella A. Kennedy, J. B. Kennedy and Frances Kennedy.  The following are the facts:

On September 25, 1907, defendant Thomas N. Kennedy was indebted to the plaintiff in the sum of $4,777.76, for which amount he executed his promissory note to plaintiff, due three years after date, and secured the payment thereof by a mortgage on 80 acres of timber land in Tillamook County, conceded to be of the value of about $1,000.  The note was not paid at maturity, and on the 6th day of March, 1911, Thomas N. Kennedy being unable to pay plaintiff the amount of said indebtedness, his brother, J. B. Kennedy, by an agreement with Thomas N. Kennedy and the plaintiff, undertook to assist Thomas N. Kennedy to pay the plaintiff, and proposed to plaintiff that 81 acres of land near Woodburn, known as the "Hunt Brothers' Farm," could be purchased; that J. B. Kennedy would advance a sufficient amount of cash to purchase it, and  that they would have it surveyed and divided into suitable tracts and placed on the market in the hands of one Ackley, a real estate dealer of Portland, at prices ranging from $100 to $225 per acre; the contract being reduced to writing in the following language:

"This agreement made and entered into this 6th day of March, 1911, by and between J. B. Kennedy, party of the first part, and Z. T. Bogard, party of the second part, witnesseth: That the party of the first part, for and in consideration of the sum of one dollar to him in hand paid, and the covenants and agreements hereinafter mentioned to be kept and performed by the party of the second part, hereby agrees to have the

tract of land known as 'Hunt Brothers' Farm,' in sec. 1, T. 5 & 6 S. R. 2 W., consisting of 81 acres of land more or less, surveyed into convenient tracts to list said property with Ralph Ackley, a real estate agent of Portland, Oregon, to be sold by him in said tracts at a sum not less than $100.00 per acre and up to $225.00 per acre. And in consideration of the covenants hereinafter mentioned to be kept and performed by the party of the second part, the party of the first part agrees to divide the proceeds of the sale of the said tract as follows, to wit: 1st. To pay to said Ralph Ackley 10 per cent commission on all sales made. 2d. To retain out of the said sales the balance arising from said sales until he has received the full sum of $7,350.00. 3d. To pay to the party of the second part, said Z. T. Bogard, all sums in excess of the said sums above mentioned until the said Z. T. Bogard has received the full sum of $6,000.00. 4th. To pay to one T. N. Kennedy all amounts received over and above the sums above mentioned. And the party of the second part agrees to release a certain mortgage for the sum of $4,600.00 which he now holds against T. N. Kennedy and wife on the south half of the northeast quarter of sec. 8, T. 3 N. R. 10 W. of the Willamette Meridian in Tillamook County, Oregon, to accept this agreement in full satisfaction of all sums due on said mortgage and the note secured thereby, and to pay over to the said J. B. Kennedy an amount equal to the difference between the principal of the said note with accrued interest to date and the sum of $6,000.00. And to perform all of the agreements on his part to be performed immediately upon the execution of this agreement by the said party of the first part.

"In witness whereof, the said parties have hereunto set their hands and seals this 6th day of March, 1911.

"J. B. KENNEDY.    [Seal]
"Z. T. BOGARD.    [Seal]

"Done in presence of T. N. Kennedy."

The complaint alleges that J. B. Kennedy has sold parts of said tract and collected thereon the sum of $10,000; and, as trustee refuses to account to plaintiff in any sum whatever, the complaint asks for a reformation of the contract and for an accounting thereon as so reformed.   The plaintiff now waives the prayer for a reformation of the contract, and asks that an accounting be had according to the terms of the contract.   Prior to the commencement of this suit Thomas N. Kennedy had commenced a suit in Tillamook County to require Bogard, this plaintiff, to specifically perform the contract herein set out by canceling the mortgage on the Tillamook County land.   Upon the trial of this suit the Tillamook County suit was consolidated herewith, and the Circuit Court decreed that plaintiff's suit be dismissed, and that plaintiff execute to T. N. Kennedy a release of the mortgage on the Tillamook County land.   The plaintiff appeals.

MODIFIED.

For appellant there was a brief, with oral arguments by *Mr. H. Overton* and *Mr. Frank Holmes.*

For respondents there was a brief over the name of *Messrs. Carson & Brown,* with an oral argument by *Mr. Thomas Brown.*

MR. JUSTICE EAKIN delivered the opinion of the court.

The contract seems to assume that the Hunt Brothers' farm had already been purchased and the title taken in the name of J. B. Kennedy.   It provides the manner of the division of the proceeds of sales thereof in the following manner, namely: (1) To Ackley, his commissions; (2) to J. B. Kennedy $7,530; (3) to Z. T. Bogard, all sums in excess of the above-men-

tioned amounts up to $6,000; and (4) the balance if any to T. N. Kennedy. The contract does not specify the amount for which the land is to be sold, naming only the lowest price per acre and the highest. It specifies that Bogard agrees to accept this contract in full satisfaction of the note and mortgage of T. N. Kennedy to him, so that when the contract was signed, the debt of T. N. Kennedy was paid, and the mortgage should have been forthwith canceled. By the contract Bogard was to take the chance of the Hunt land bringing money enough to pay J. B. Kennedy the money he advanced and sufficient over to pay him the $6,000. He says in his evidence that he thought he would get back part of the debt T. N. Kennedy owed him. The contract is not ambiguous, and needs no construction.

Plaintiff further contends that defendant J. B. Kennedy should account to him for the land at some value greater than what was actually received by him, but there is no charge in the complaint that the sales were made in fraud of the agreement or for less than $100 per acre—only that defendant had sold and collected thereon to the amount of the $10,000, and asking for an accounting—so that all plaintiff can claim now is an accounting for the proceeds of sales actually made. Messrs. Carson & Brown wrote to plaintiff on the 20th day of June, 1911, calling attention to the fact that the land could not be sold at the price advertised, as the market had gone down, and asking plaintiff for suggestions, or to furnish a buyer who would pay a better price than was available to defendant. The evidence shows that the tracts could not be sold at the prices placed on them because there was no demand therefor. Plaintiff did not reply to the above-mentioned letter. The condition of the account is as follows: Amount received as the proceeds from sales of

the tracts, $8,862, which includes deferred payments on sales and contracts made to J. B. Kennedy. From this must be deducted under the contract Ackley's commissions, $886. The amount due J. B. Kennedy by the contract is $7,530. In this statement J. B. Kennedy is given credit for the amount of the mortgage upon the Hunt Brothers' land, which he assumed, although about $1,500 thereof has not yet been paid, being included in the $7,530 credited to J. B. Kennedy. Thus J. B. Kennedy has on hand, over and above what is due him and Ackley, $446 and 13 acres of the tract yet unsold.

Therefore the decree of the trial court will be modified, and a decree entered here requiring plaintiff, within 30 days, to cancel and release the mortgage on the land in Tillamook County, executed by J. N. Kennedy and wife to the plaintiff on the 25th day of September, 1907, covering the south half of the northeast quarter of section 8, township 3 north, range 10 west, Willamette meridian; and, in case plaintiff neglects so to do within the said 30 days, the decree in this case shall operate as and stand for a release and satisfaction of said mortgage; that plaintiff have judgment against the defendant J. B. Kennedy in the sum of $446, now due on this accounting, without prejudice to such suit or action as may hereafter be found necessary in this transaction. Neither party shall recover costs.                                    MODIFIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCNARY concur.